## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAVID SANDOVAL,

       Petitioner,

v.                                            CIV 05-1252 MV/ACT

ROBERT ULIBARRI, Warden,

       Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND
## RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Petitioner David Sandoval's Petition for a Writ of Habeas Corpus. [Doc. No. 1]. Petitioner filed his Petition, along with accompanying exhibits, on November 30, 2005 and the Respondent filed his Answer on January 10, 2006, together with a Motion to Dismiss and a Memorandum in Support. [Doc. Nos. 6, 7 and 8]. The Petitioner filed a Response to the Motion to Dismiss on January 27, 2006. [Doc. No. 9]. The District Court Judge to whom this case is assigned referred the case to the Magistrate Judge to make findings of fact and recommend a final disposition. [Doc. No. 10]. The United States Magistrate Judge, having reviewed the Petition, the Answer, the accompanying Exhibits, the Motion to Dismiss, the Petitioner's Response and the relevant law, recommends that the Petition for a Writ of Habeas Corpus be DENIED and that the Respondent's Motion to Dismiss be GRANTED.

PROPOSED FINDINGS

PROCEEDINGS AND PLEADINGS

1.  Petitioner is currently incarcerated in a New Mexico correctional facility pursuant to a

Judgment, Order and Commitment of the Tenth Judicial District Court, County of Quay, State of

New Mexico, originally entered of record on November 16, 2001. The Judgment was later

amended and filed of record on June 12, 2002. [Answer, Exhibits A & B].  Petitioner was

subsequently re-sentenced after his appeal to the New Mexico Court of Appeals.  The sentence he

is currently serving was entered of record on January 10, 2004. [Answer, Exhibit L].

2.  Petitioner was convicted on September 20, 2001, after a jury trial of one count of

Aggravated Battery, one count of Shooting at or from a Motor Vehicle and one count of

Tampering with Evidence. [Answer, Exhibit A]. Petitioner was represented by an appointed

attorney during his pre-trial proceedings and by another appointed attorney during his trial and

sentencings.

3.  Petitioner timely appealed his convictions to the New Mexico Court of Appeals. His

appeal raised arguments that his convictions should be reversed because: 1) there was

fundamental error in instructing the jury on defense of another; 2) there was fundamental error in

instructing the jury on self-defense; 3) there was fundamental error in omitting the jury instruction

on the definition of reckless disregard; 4) his conviction of Tampering with Evidence was not

supported by sufficient evidence; and 5) admitting the preliminary hearing testimony of the victim

because the victim was unavailable to testify in person at trial violated his Sixth Amendment right

to confrontation.  The Court of Appeals of the State of New Mexico affirmed Petitioner's

convictions of Aggravated Battery and Shooting at or from a Motor Vehicle finding no

2

fundamental errors nor constitutional error in admitting the prior testimony of the victim.  But the Court reversed the conviction of Tampering with Evidence finding there was not sufficient evidence to support the conviction.  [Answer, Exhibit H].

4.  The state district court amended Petitioner's sentence in accordance with the mandate of the Court of Appeals.  Petitioner is currently serving a sentence of thirteen and one half (13 ½) years which includes enhanced sentences on the two convictions because of Petitioner's prior criminal convictions. [Answer. Exhibit L].

5.  Petitioner filed a petition for Writ of Certiorari in the Supreme Court of New Mexico on December 10, 2003.  The Supreme Court denied the Writ on January 15, 2004. [Answer, Exhibits I & J].

6.  Petitioner filed a *pro se* Petition for the Writ of Habeas Corpus with the Tenth Judicial District Court, County of Quay, on September 2, 2004.  He raised seventeen grounds in support of his Petition, including, *inter alia*, claims of ineffective assistance of counsel at trial and at his preliminary hearing. [Answer, Exhibit M].

7.  On October 5, 2004, the District Court Judge who presided over the jury trial of Petitioner, Judge Ricky D. Purcell, summarily dismissed the Petition. [Answer, Exhibit N].

8.  On November 4, 2004, Petitioner filed a timely, *pro se*, Petition for a Writ of Certiorari with the Supreme Court of New Mexico; the Writ was denied on January 6, 2005.  The Supreme Court subsequently also denied Petitioner's Motion for Reconsideration.  [Answer, Exhibits O, P & Q].

9.  Petitioner, represented by retained counsel, filed a second Petition for a Writ of Habeas Corpus in the Tenth Judicial District Court, County of Quay, on June 9, 2005.  The Petition was

again assigned to his trial judge, District Court Judge Ricky D. Purcell.  Petitioner raised four arguments:

A. that he was denied his right to the effective assistance of counsel because his appointed counsel failed to present his theory of the case, failed to conduct a pre-trial investigation, failed to present expert testimony at trial, failed to object to the unavailability of the victim/witness resulting in a lack of confrontation, failed to impeach prosecution witnesses, failed to prepare defense witnesses to testify, failed to safeguard the right to a speedy trial, failed to request jury instructions on self defense, the defense of others and diminished capacity of defendant, and failed to effectively represent his client at the sentencing on the issue of the enhancements; Petitioner argued that the cumulative effect of these errors denied him his right to effective assistance of counsel;

B. that he was denied his right to effective assistance of counsel during his appeal;

C. that he was denied a fair trial due to prosecutorial misconduct; Petitioner argued that he suffered Brady violations and that the prosecution presented knowingly false testimony; and

D. that the accumulation of errors in the case resulted in a miscarriage of justice. [Answer, Exhibit R]

10. Petitioner filed affidavits and evidence in support of the Second Petition for a Writ of Habeas Corpus with the state court.  The evidence included the declarations of three potential witnesses,  New Mexico Magistrate Judge J. Bronson Moore, Vicky Sandoval (his spouse) and David Sandoval Jr. (his son who had testified at trial), a letter from Petitioner's treating psychologist, Dr. Evelyn Sandeen (who had also testified at the trial), and the medical records of

4

the victim involving the gunshot wound to victim's hand. [Answer, Exhibits R & S].

11. The District Court Judge ordered the State to respond to the Second Petition for the Writ of Habeas Corpus.  The State filed its Response on September 1, 2005. [Answer, Exhibits T & U].

12.  On September 9, 2005, Judge Ricky D. Purcell denied the Petition in a written opinion.  The trial judge found that the factual assertions in the Petition and the affidavits "are inconsistent with evidence introduced at trial."  He found that in each instance the proffered evidence was either not probative of the defense theories advanced by the Petitioner or were merely cumulative to the evidence heard and reviewed by the jury.  He also found that the argument put forth by the Petitioner that he acted in self defense or in defense of others "is inconsistent with the Petitioner's own testimony at trial" and is contradictory to the defense of post traumatic stress syndrome now being asserted.  The trial judge noted that Petitioner had now been represented by four different attorneys and that all had scrutinized the performance and competence of his predecessor based upon inconsistent theories of defense or justification for the acts of Petitioner.  Lastly, the trial judge noted that all the factual, procedural and ancillary questions now being raised were available to the Petitioner on his direct appeal and were presented as the basis of his appeal.  The judge concluded that the Petitioner did not state a legal claim for relief and that the record conclusively evidenced that Petitioner was not entitled to the relief he sought. [Answer, Exhibit V].

13. Petitioner, through his retained counsel, filed a Writ of Certiorari in the Supreme Court of New Mexico on October 7, 2005.  The Writ was denied on November 4, 2005. [Answer, Exhibits W, X & Y].

14. Petitioner, represented by the same counsel who filed his Second State Petition for the Writ of Habeas Corpus, timely filed this federal Petition for a Writ of Habeas Corpus on November 30, 2005. [Doc. No. 1].  Petitioner raises two claims:

A.  that he was denied his right to the effective assistance of counsel because his appointed trial counsel:

1)  failed to conduct any meaningful investigation of Petitioner's claims of self-defense;

2)  failed to consult with his treating psychiatrist to explore a defense based on the lingering effects of post-traumatic stress disorder (PTSD);

3)  failed to present testimony of available defense witnesses who could have corroborated Petitioner's claims of a long-standing fear of victim;

4)  stipulated to the unavailability of a key prosecution witness, the victim; and

5)  failed to request apposite jury instructions on Petitioner's theory of the case;

and

B.  that he was denied his right to be free from prosecutorial misconduct because the State suppressed potentially exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).

EVIDENCE PRODUCED AT TRIAL

15.  As every pleading and opinion in this long standing case states, the evidence produced at trial showed two different versions of the factual events that eventually led to Petitioner's convictions.  The New Mexico Court of Appeals summarized the trial evidence as follows:

On Easter Sunday evening in 2000, Sam Parra (Victim) and Donald Bruhn were driving in Defendant's neighborhood where they had just visited a friend.  About a block from Defendant's house, they encountered Defendant's son, David Sandoval, Jr. who was with his thirteen-year-old cousin, Daniel Jimenez.  Victim and David Jr. had a history of fighting.  The conflict arose out of an accusation that Victim had raped David Jr.'s sister two or three years earlier.  Victim had not been prosecuted for the alleged assault, but as a result, he and Defendant's family were embroiled in a heated and ongoing feud.

When the young men met on the street, an altercation ensued.  It is disputed who instigated the confrontation.  The quarrel continued in front of defendant's house.  Upon arrival at the residence, Daniel ran inside and announced that Victim and Bruhn were outside.  Defendant looked out the window, recognized Victim's car, and ran upstairs to retrieve his wife's rifle.  He loaded the rifle with a magazine and stationed himself by a window overlooking the street where the confrontation between David Jr., Victim and Bruhn was taking place.  Defendant testified that based on past threats by Victim and Bruhn, he thought they had come to "kill" his family.  However, he admitted that at that point he had not seen Victim and or Bruhn with any weapons.

The State and Defendant offered conflicting accounts of the event that then unfolded.  Defense witnesses - Defendant, David Jr., Daniel and other eyewitnesses related to Defendant - testified that Victim was wielding a gun and that both he and Bruhn were threatening David Jr. with violence.  They testified that they saw Victim walk back to his car and retrieve something from inside.  They then observed him advancing toward David Jr. brandishing a gun.

Defendant testified that when he saw Victim with the gun, he tried to shoot him, but because the safety feature of the rifle was still on, the rifle did not fire.  Defendant then slammed the magazine and released the safety; at that moment, he saw Victim point his gun up at him and yell, "What are you going to do with that, you fucking pussy?"  He also heard David Jr. cry, "No, Dad, no!"  Defendant came out on the balcony.  As Victim and Bruhn turned to run, Defendant opened fire, striking Victim who fell to the ground and then got back up and continued to the car.  Defendant continued shooting at the car as Victim and Bruhn got back in and drove off.

Defendant further testified that, while shooting at the car, he experienced a flashback to his combat days in Vietnam.  He explained that when the smoke from his rifle hit his senses, he "saw Viet Cong" and emptied the remaining rounds in his clip.  Defendant had been treated for post traumatic stress disorder in the past, and expert testimony about the nature and symptoms of the disorder was introduced at trial.

In contrast to the defense's version of the event, the State presented evidence that the Victim and Bruhn were unarmed during the incident and that they were engaged in only a verbal dispute with David Jr. when Defendant began shooting.  Bruhn testified that he drove a short distance past Defendant's house and parked down the street, approximately 60 yards from the house.  Both he and Victim got out of the car and were standing in the street arguing with David Jr., who was in his yard.  As they were arguing , David Jr. suddenly looked up at the balcony of his house and shouted, "No, Dad, don't shoot!"  Victim and Bruhn looked up and saw a gun emerge from the house.  Gunfire

followed.

Bruhn took cover behind Victim's car as bullets sprayed the street and the car; he was not injured. Victim, however, was hit three times, once in the hand and in the knee after returning to the car and once in the back upon trying to return to the car. Several shots were fired into the car, breaking and shattering windows and blowing out two of the tires. Defendant continued to shoot into the car as Bruhn and Victim got back in and drove off.

Approximately two to four minutes after fleeing the scene of the shooting, Bruhn and Victim were stopped by police officer Patty Lopez. Victim was bleeding severely and having trouble breathing due to a punctured lung, and Bruhn was driving him to the hospital. Upon stopping the car, Officer Lopez searched the car, but did not find any guns or weapons. Moreover, based upon his review of the time-entries in the police logs, investigating police officer, Detective Jack Hendrickson, did not think there was sufficient time for Bruhn or Victim to dispose of a weapon, if one existed; no second gun was ever recovered during the police investigation. At trial, Officer Lopez testified that she believed Bruhn and Victim were on the most direct and uninterrupted route to the hospital, while Deputy Pablo Benavidez thought an alternative route would have been more direct.

When Deputy Benavidez, who overheard the gunshots in the area, arrived at Defendant's house to investigate, Defendant immediately confronted the deputy and confessed that he was responsible for the shooting. He told the deputy that he had shot Victim for harassing his family. He did not immediately inform authorities that Victim was armed, and that fact was not included in the police report. Other defense witnesses also did not come forward with the allegation that Victim was armed until either the preliminary hearing or the trial.

Two hours after Defendant's arrest, Defendant's wife surrendered to police the rifle allegedly used to commit the shooting. The rifle, however, was missing its firing component or clip.

Defendant was charged with assault with intent to commit a violent felony, aggravated battery with great bodily harm, shooting at or from a motor vehicle, and tampering with evidence. A jury trial was held on September 20, 2001. The jury acquitted defendant of the assault charge, but convicted him of aggravated battery, shooting at a motor vehicle and tampering with evidence.

<u>DISCUSSION</u>

16. The federal statute governing applications for a writ of habeas corpus, 28 U.S.C. §

2254, states:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant

to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the  claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

17.  Petitioner has exhausted all of the claims he now brings in this Petition in the state courts below. Both claims, including the five arguments supporting his claim of ineffective assistance of counsel, have been addressed by the state courts below and denied.

18 . The issue in this federal Petition is whether the state court decision that denied Petitioner's claims is contrary to, or involves an unreasonable application of, clearly established federal law, or whether the state court decision below was based on an unreasonable determination of the facts in light of all the evidence presented.

### THE STATE COURT DECISION DENYING PETITIONER'S WRIT FOR HABEAS CORPUS WAS ON THE MERITS

19.  Petitioner has argued that the state court decision below issued by the New Mexico District Court Judge who conducted the trial, originally sentenced the Petitioner and subsequently re-sentenced the Petitioner, did not issue an opinion on the merits as that term is used by the AEDPA.   The opinion, attached as Exhibit V to the Answer, [Doc. No. 8], while it did not cite

federal or state case law, was written after Judge Purcell had the benefit of extensive, cogent briefing on the issues raised in the Petition for the Writ of Habeas Corpus.  See, Exhibits R, S and U to the Answer [Doc. No. 8].

20. The opinion,  referenced in this Proposed Findings and Recommended Disposition in Paragraph No. 12, explicitly referred to the defenses of self defense and defense of others finding that these defenses were inconsistent with Petitioner's own testimony at his trial.  The opinion further found that the defense of diminished capacity due to PTSD was inconsistent with the defenses of self defense or defense of others.  The opinion stated that the factual assertions both in the Petition and in the affidavits submitted with the Petition were inconsistent with the evidence presented at trial.  Moreover, the opinion found that the proffered testimony would have been either not necessarily probative of the defenses advanced by the Petitioner or would have been cumulative.

21.  It is clear that the decision was not based on procedural grounds. Instead, the state court judge examined the arguments presented in the Petition and the Response and obviously reviewed the Petitioner's proffered evidence.  The lack of citation or detailed discussion of each of Petitioner's arguments does not mean that the claims of the Petitioner were not adjudicated on the merits.  "Deference is accorded to a state court result even when the state court fails to discuss any federal law rationale for its decision or cite to any federal authority."  Weber v. Scott, 390 F. 3d 1169, 1174  (10th Cir. 2004), citing to Aycox v. Lytle, 196 F. 3d 1174 (10th Cir. 1999).

22. The Court finds that the written opinion of Judge Ricky C. Purcell demonstrates that the trial judge examined the Petitioner's claims on the merits and that his decision denied those

claims "on the merits" as that term is used by the AEDPA.

23.  Since the decision below denying the state Petition for the Writ of Habeas Corpus adjudicated Petitioner's claims on the merits, this Court must now determine whether that decision was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, keeping in mind of course that claims of ineffective assistance of counsel usually involve mixed questions of law and fact.  <u>Strickland v. Washington</u>, supra at 698.

<u>PETITIONER'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE
OF COUNSEL AT TRIAL WAS NOT VIOLATED</u>

24. The Sixth Amendment of the United States Constitution guarantees that any citizen charged with a crime has the right to the assistance of counsel. U.S. Const. Amend. VI.  This constitutional right also assures that counsel's assistance is effective.  <u>McMann v. Richardson</u>, 397 U.S. 759 (1970).  In order to prevail on a Sixth Amendment claim of ineffective assistance of counsel, Petitioner must prove that: 1) counsel's representations fell below an objective standard of reasonableness;  and 2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).

25.  The first prong of establishing an ineffective assistance of counsel claim requires that Petitioner demonstrate that his attorney's performance fell below an objective standard of reasonableness.  <u>Strickland v. Washington</u>, supra,  at 687.  To prevail on this prong, Petitioner must establish that his attorney's conduct was unreasonable under the circumstances.  <u>Id.</u>, at 688.

However,  "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 689.

26.  The second prong of establishing an ineffective assistance of counsel claim requires a showing of prejudice.  Petitioner must establish that but for his attorney's errors, there is a reasonable probability that the outcome of his trial would have been different. A reasonable probability is one that is sufficient to undermine confidence in the jury's verdict. Id., at 695.

27.  While a claim of ineffective assistance of counsel involves mixed questions of law and fact,  Gonzales v. McKune, 247 F.3d 1066 (10th Cir. 2001), if the claims of ineffective assistance of counsel were decided adversely to the Petitioner by the state courts on the merits, this Court must still review the factual findings of that decision under the aegis of the AEDPA. Wiggins v. Smith, 539 U.S. 510 (2003).


Petitioner's Claim that his Trial Counsel Failed to Conduct A
Meaningful Investigation of his Claim of Self Defense

28. Petitioner argues that his appointed trial attorney failed to conduct a meaningful investigation of the facts surrounding Petitioner's case because his counsel did not investigate evidence about prior threats made by the victim to Petitioner and his family, did not investigate the extent of Petitioner's post-traumatic stress disorder (PTSD) and did not fully explore Petitioner's claim of self defense.

29.  As in every ineffective assistance of counsel claim, this Court must examine whether trial counsel's assistance was reasonable under all the circumstances.   Strickland, supra, at 688. Judicial scrutiny of counsel's performance must be highly deferential.  Id., at 689.  The Court

must every effort to eliminate the distorting effects of hindsight and to evaluate counsel's conduct and decisions from trial counsel's perspective at the time.  Id.

30.  The fact that the state court judge who denies the Petitioner's State Petition for the Writ of Habeas Corpus on the merits is also often the judge who presided over Petitioner's trial and was able to observe the conduct and trial performance of the trial attorney, as in the present case, is one of the primary reasons for the highly deferential review demanded by the AEDPA. Judge Purcell was able to observe firsthand trial counsel's preparedness and examination of witnesses.  His perception, therefore, can be quite different from a reviewing court's perception of whether trial counsel conducted reasonable trial preparation or whether trial counsel's performance during trial fell below an objective standard of reasonableness, especially when the reviewing court's perception of the trial is influenced by well written pleadings and seemingly persuasive arguments.

31.  Counsel has a duty to make a reasonable investigation before trial.  A failure to investigate may fall beneath an objective standard of reasonableness.  Wiggins v. Smith, supra. However, despite Petitioner's assertions, the record indicates that Petitioner's trial counsel did make a pretrial investigation, prepared his trial witnesses (albeit the night before they were called to the stand) and presented several witnesses in addition to Petitioner himself who testified in support of the defenses Petitioner's was presenting at trial - self defense and defense of others.

32.  For example, defense witnesses Daniel Jimenez, Petitioner's nephew, Richard Teakel, Petitioner's brother-in-law, Joey Romero, Petitioner's brother-in-law and neighbor, David Sandoval, Jr., Petitioner's son, and Petitioner all testified that they saw Sam Parra, the victim, in possession of a gun either a few minutes prior to the shooting or at the scene of the shooting.

David Sandoval, Jr. testified about the altercation that occurred just prior to the shooting with Parra and Bruhn and about the threats that Parra threw at him immediately before Parra pulled out a gun. Petitioner testified extensively about the ongoing feud between Parra and his family.

33.   One can always argue that trial counsel did not make an adequate investigation.  This is exactly the kind of post trial hindsight that almost every Petitioner who brings a claim of ineffective assistance of counsel engages in and of which the U.S. Supreme Court has specifically admonished the courts to be aware.  Of course there is always another witness, perhaps an even more effective witness, that could have testified.  One can always speculate that particular testimony would have been the testimony that persuaded the jury that Petitioner was acting in self defense or in defense of others.  The issue is not whether trial counsel could have made a more extensive investigation, been better prepared, done a more masterful job in examining his witnesses or made, in hindsight, wiser choices in his presentation of the evidence.  See, Strickland, supra.  The issue is whether trial counsel's conduct fell below an objective standard of reasonableness.  Petitioner has not established that his trial counsel's failure to conduct a more thorough investigation of his case fell below this standard.

34.   Trial counsel's pre-trial investigation and preparation was adequate enough to allow him to present testimony that supported the defenses of self-defense and defense of others.  Trial counsel presented testimony from several people that they saw Parra with a gun either at the scene of the shooting or immediately beforehand.  Several witnesses testified that Parra pointed the gun at David Sandoval, Jr.  Petitioner testified that he saw Parra with a gun and that Petitioner thought Parra was going to kill his son and family.  Petitioner's attorney presented these defenses in both his opening statement and his closing argument. By voting to convict Petitioner of

14

Aggravated Battery the jury demonstrated that it did not believe, despite evidence presented by the defense, that Petitioner acted either in self-defense or in defense of others.

<u>Petitioner's Claim that his Trial Counsel Failed to Consult with his Treating Psychiatrist to Explore a Defense based on the lingering Effects of PTSD</u>

35.  Petitioner argues that he was denied effective assistance of counsel because his trial counsel failed to consult expert witnesses to testify at trial, specifically the expert testimony of Dr. Evelyn Sandeen, Petitioner's treating therapist, and failed to speak prior to trial with Dr. Sandeen to understand the extent of Petitioner's combat related PTSD.  Dr. Sandeen's testimony, had she been allowed to testify as Petitioner's treating psychologist, would have allegedly further supported Petitioner's claim that his actions were influenced by his PTSD.

Dr. Sandeen wrote in her letter, attached as an Exhibit to Petitioner's Second State Petition for the Writ of Habeas Corpus [Answer, Exhibit D to Exhibit V], that it was her opinion that Petitioner's severe combat-related Post-Traumatic Stress Disorder caused him to "truly perceive[ ] the young man as threatening him and his family, due to seeing the young man approaching his house with a handgun."  Dr. Sandeen also wrote that in her opinion that Petitioner, "when faced with the extreme stress of being threatened as well as the visual and olfactory cues of handling and smelling a weapon being fired, had a flashback to his Vietnam combat experiences.  At that point, he was no longer in contact with reality and did fire upon the young man's back seeing him as an enemy combatant."   As she explains, Petitioner's trial counsel had her testify about the syndrome of PTSD but did not ask her about Petitioner's clinical condition or her treatment of him.

36. According to Petitioner, the trial judge limited Dr. Sandeen's testimony at trial to an explanation of PTSD and its symptoms because trial counsel had failed to timely identify Dr. Sandeen as an expert witness. Petitioner testified about the flashback that he experienced to his Vietnam days when the smell and sound of the gunfire from his rifle hit his senses but his testimony was not corroborated or bolstered by his treating psychiatrist.

37. In order to establish that Petitioner's constitutional rights were violated by  ineffective assistance of trial counsel, Petitioner must show both that his counsel's conduct fell below an objective standard of reasonableness and that but for this deficient performance there is a reasonable probability that the result of the trial would have been different. The question ultimately is whether the alleged deficient performance by trial counsel made Petitioner's trial fundamentally unfair. Since both prongs of the <u>Strickland</u> test must be met by Petitioner, the Court is not required to address both issues if the Petitioner fails to make a sufficient showing on either one. <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984).

38. On this claim, Petitioner fails to show that even if Dr. Sandeen had been able to testify as to her treatment of Petitioner and explain, as she did in her letter, how Petitioner's PTSD affected his perception of the situation, that there is a reasonable probability that the jury would have reached a different verdict. Petitioner did not testify that he had a PTSD flashback at the beginning of the shooting. To the contrary, Petitioner testified that when his nephew ran into the house and announced  that Parra and Bruhn were coming, Petitioner ran upstairs, grabbed his wife's rifle and loaded it with a magazine. He admitted on cross examination that he had not seen any weapons on Bruhn or Parra at that point. But Petitioner did testify that when he saw Parra approach the house with a gun, Petitioner went out on the balcony. Petitioner testified that he

16

tried to fire the rifle at that point but was unable to because the safety was still on. He slammed the magazine, clicked the safety up and while Parra was verbally taunting him, began shooting. At that point Parra fell. He testified that he thought Parra was going to kill his family.

39. Sandoval testified that after he had fired the rifle at least three times, he decided to disable the car. He stated that he wanted to prevent the two young men from leaving the scene and wanted to prevent them from destroying or removing any evidence. It was only at that point in his testimony that he testified that the smoke and smell of the weapon hit him and that he saw Viet Cong in a flashback. He proceeded to empty the clip.

40. Petitioner's testimony is not that his perception was altered by PTSD at the beginning of the shooting but that he was acting in self defense and in the defense of others when he grabbed the weapon, loaded it, tried to shoot, removed the safety, shot Parra and made the decision to disable the car. His testimony of his flashback does not comport with Dr. Sandeen's proffered testimony. Had she testified as she states she would have, the jury, far from being persuaded that Petitioner was so affected by his PTSD that he had a diminished capacity to control his behavior, would have heard contradictory evidence from Petitioner and his own treating psychologist that attempted to explain his decisions, his state of mind and his actions as he began shooting Parra and later the car.

41. The testimony of Dr. Sandeen, even if it had been presented to the jury, does not persuade this Court that it would have created a reasonable probability that the outcome of the trial would have been different. The Court finds that the Petitioner has failed to establish that his trial counsel's failure to present the expert testimony of Dr. Sandeen prejudiced the Petitioner to the extent required by established federal law. See, <u>Strickland v. Washington</u>, supra.

<u>Petitioner's Claim that his Trial Counsel Failed to Present Testimony of Available Defense
Witnesses who could have Corroborated Petitioner's Claims of a Long-Standing Fear of Parra</u>

42.   Petitioner argues that he received ineffective assistance of trial counsel because his counsel failed to present several witnesses, including his wife, Vicky Sandoval, Tucumcari Magistrate Judge Bronson and further testimony of his son David Sandoval, Jr., all of whom would have testified about past threats by Parra toward the Sandoval family.  The proffered testimony of these three witnesses was attached to the Second State Petition for the Writ of Habeas Corpus and reviewed by the trial judge when he denied the Petition.

43. Petitioner's wife, Vicky Sandoval, states that she would have testified that a few months prior to Easter Sunday, 2000, she observed Donald Bruhn drive by their house and yell a threat at her husband.  She also states that she would have testified about her attempt to report this threat, her attempt to obtain a restraining order against Parra for her daughter, her husband's visit to Magistrate Judge Bronson and her husband's peaceable nature.  Magistrate Judge Bronson states that he would have testified that Petitioner came to see him at least twice about threats and harassment that Parra was directing toward the Sandoval family and about the advice that Magistrate Judge Bronson gave to Petitioner.  David Sandoval, Jr. states that had he been able to testify further, he would have testified about several occasions when Parra or Bruhn confronted him, specifically once at a grocery store and once when he was driving his car.  He also would have testified that he thought Parra was going to shoot him at the house on Easter Sunday just prior to his dad firing the rifle.

44.  David Sandoval, Jr. did testify at the trial although he did not testify about previous threats he had personally received from Parra or Bruhn.  Vicky Sandoval and Magistrate Judge

18

Bronson did not testify.  The proffered testimony would have, Petitioner argues, corroborated Petitioner's own testimony about his fear of Parra and the long standing feud between Parra and the Sandoval family.

45.  The state court decision denying Petitioner's Writ of Habeas Corpus found that the testimony of these three witnesses would have been cumulative.  Petitioner had already testified about the feud between his family and Parra.   The testimony of these three witnesses would not have brought forth new issues but, barring hearsay objections, would have merely corroborated testimony already before the jury.

46.  The issue is whether trial counsel conduct fell below an objective standard of reasonableness by failing to present these three witnesses' proffered testimony.  The Court must indulge a strong presumption that trial counsel's conduct and decisions fell within the wide range of reasonable professional assistance.  Strickland v. Washington, supra, at 689-90. The Petitioner has not been able to establish that his counsel's decision not to call either Vicky Sandoval or Magistrate Judge Bronson or present further testimony from David Sandoval, Jr. about previous threats fell below an objective standard of reasonableness.  Testimony about the ongoing feud was presented to the jury and Petitioner has presented no evidence that this further evidence would have done anything more than add cumulative testimony to the trial.  There are often legitimate reasons for trial counsel not to call particular witnesses that seem wise at the time of trial but that in hindsight may not seem as wise.  This is exactly the type of professional decision that the Court must presume falls within the wide range of reasonable professional assistance without further evidence from Petitioner.

<u>Petitioner's Claim that his Trial Counsel was Ineffective because He Stipulated to the
Unavailability of a Key Prosecution Witness</u>

47.   Petitioner also argues that his trial counsel was ineffective because he stipulated that
Parra was unavailable to testify at trial.   The State informed Petitioner and his counsel that
despite their efforts to locate Parra for over a year, they were unable to find him.  The State
indicated that Parra's mother did not know where he was but that his father did.  However,
Parra's father refused to tell the State of his whereabouts.  The State further claimed that Parra
was afraid to return to Tucumcari.  The State wrote that it was prepared to have its investigator
take the stand and testify as to the efforts that had been made to locate Parra.   At that point,
Petitioner's trial counsel decided to stipulate as to Parra's unavailability.

48.   The State informed the trial court judge and Petitioner's trial counsel that it wanted to
play the tape of Parra's testimony at the preliminary hearing in lieu of Parra appearing at trial.
Petitioner's counsel objected, arguing that Parra's presence was essential for the trial, that
Petitioner's previous counsel who conducted the cross examination at the preliminary hearing may
haven been under the influence of cocaine[1] when he cross examined Parra thus prejudicing
Petitioner, and that Petitioner was willing to give the State more time to attempt to find Parra.

49.   Petitioner argues that his trial counsel was ineffective when he conceded that the
State had made sufficient efforts to locate Parra because his stipulation was not based on an
adequate factual basis.  However, the record indicates that the State had made efforts for over

---

[1] Attorney LeRoy Gonzales was originally appointed to represent Petitioner and did
represent him during the Preliminary Hearing.  Subsequently neither the State nor Petitioner was
able to contact Mr. Gonzales who apparently had disappeared because of a substance abuse
problem.  Mr. Gonzales was later disbarred from the New Mexico State Bar as a result of his
substance abuse problem.  Petitioner's trial counsel was appointed several months after the
Preliminary Hearing.

one year to locate Parra and was prepared to have its investigator testify as to the State's efforts. The trial court made a finding, after hearing the State's offer of proof, that Parra was unavailable and that the testimony from the Preliminary Hearing would be used at trial.

50.   Petitioner argues that both his constitutional right to effective assistance of counsel and his constitutional right to confront and cross examine witnesses were violated by this concession by his trial attorney.  Petitioner is mistaken as to the latter argument however. Petitioner was represented by counsel at the Preliminary Hearing when Parra testified under oath. Petitioner has argued that his attorney may have been under influence of cocaine at the time of the hearing but offers no proof of this allegation, just conjecture based upon subsequent events involving this attorney.   The State contends that this attorney vigorously and competently cross-examined Parra.   The fact that Petitioner's counsel was present and cross-examined the witness while he was under oath on behalf of Petitioner preserved Petitioner's Sixth Amendment right to confront and cross examine witnesses against him.  See, e.g., <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).

51.   Nor does the fact that Petitioner's trial counsel conceded that the State's offer of proof that they had been unavailable to locate Parra was adequate to establish that the witness was unavailable constitute conduct that falls below an objective standard of reasonableness.  Quite to the contrary, upon hearing the State's offer of proof of their efforts to locate the witness, trial counsel chose to concede this point and make his arguments elsewhere.

52.   The Court finds that Petitioner's trial counsel's concession that the witness Parra was unavailable to testify at the trial was not conduct that fell below an objective standard of reasonableness.

Petitioner's Claim that his Trial Counsel Failed to Request Apposite
Jury Instructions on Petitioner's Theory of the Case

53.  Petitioner argues that the fact that his trial counsel failed to request certain basic jury instructions relating to self defense, defense of others and reckless disregard constituted ineffective assistance of counsel.  The New Mexico Court of Appeals found that the jury instructions in Petitioner's trial were deficient in that: 1) the elements instructions for aggravated battery and shooting at a motor vehicle failed to require a finding by the jury that the Defendant did not act in defense of his son[2]; 2) the jury instructions failed to include a definition of self-defense; and 3) the instruction on shooting at a motor vehicle failed to include the element of self-defense and the element of willfulness. [Answer, Exhibit H, pp. 5 - 11].  Trial counsel failed not only to request these jury instructions but also failed to preserve the errors for review.  As the Court of Appeals acknowledged,

> If we were to examine the instructions entirely in the abstract, we would agree with Defendant that they appear deficient in informing the jury on self-defense.  The elements instruction for shooting at a motor vehicle was facially erroneous in that it omitted the essential elements of both willfulness and unlawfulness. [Citations omitted.]  Moreover, without an instruction precisely defining self-defense, a reasonable juror would be confused and misdirected about what facts presented at trial constituted self-defense.  Thus, we acknowledge that Defendant's claimed errors would warrant reversal if his claims had been adequately preserved.

Answer, Exhibit H, p. 11.

54.  However, the Court of Appeals, after carefully examining each deficient jury instruction and the jury instructions as a whole, concluded that under a fundamental error standard of review the errors in the jury instructions did not amount to fundamental error.

---

[2] The Court of Appeals did note however that the jury instructions included a separate instruction defining defense of another.  See. UJI 14-5184.

22

"Where the jury verdict would have been the same absent the error, we will not reverse for fundamental error." [Answer, Exhibit H, p. 12].  The Court determined that the jury had been able to understand the essential elements of the crimes from the instructions as a whole, had rejected the Defendant's two defenses - self defense and defense of others, and had been able to understand that the crime of shooting at a motor vehicle included the element of reckless disregard.  The Court noted that reversals for fundamental error are reserved only for those cases in which the error is of such magnitude that it affected the trial outcome or would shock the conscience to let the conviction stand. Id.

55.  Turning to the second prong of the Strickland test, the issue is whether trial counsel's errors in the jury instructions caused prejudice to the Petitioner such that there was a reasonable probability that the outcome of his trial would have been different.  The Court of Appeals has already weighed in on that determination, deciding the issue adversely to the Petitioner.  As the Court of Appeals wrote,

> Because the jury rejected the facts supporting Defendant's defense of another claim, it necessarily would have rejected his related self-defense claim, even if correctly instructed on the defense.  Thus, we conclude that the self-defense instructions, although deficient, do not constitute fundamental error under the facts and circumstances of this case. ... For similar reasons, we conclude that the omission of the "willfulness" element in the instruction for shooting at a motor vehicle is harmless.

Answer, Exhibit H, p. 13.

56.  Like the Court of Appeals, this Court finds that the Petitioner has failed to establish the prejudice necessary to constitute the second prong of the Strickland test even though his trial counsel failed to propose correct or sufficient jury instructions and failed to preserve the errors in those jury instructions.  Having failed to establish the necessary prejudice, the Petitioner has failed to establish that this conduct of trial counsel constituted ineffective assistance of counsel.

<u>PETITIONER WAS NOT DENIED HIS CONSTITUTIONAL RIGHTS BECAUSE
OF THE ALLEGED SUPPRESSION OF EXCULPATORY EVIDENCE</u>

.    57.  Petitioner argues that trial counsel was not provided with the medical records of the

victim Parra until after the trial had begun and then only when Petitioner provided his trial counsel

with a copy.  Petitioner argues that the State suppressed these medical records, which contained

potentially exculpatory evidence, and that this suppression amounted to prosecutorial misconduct

in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).   The State vehemently denies these

claims.

58.  The medical records in question were attached to the Second State Petition for the

Writ of Habeas Corpus and showed the bullet wound to Parra's hand.  It is undisputed that Parra

did not suffer an exit wound to his hand.  Petitioner's contention is that the lack of an exit wound

may be probative of Parra holding a weapon in that hand, thus preventing the bullet from exiting.

Petitioner has not been able to present any more support for this theory other than this

speculation.

59.  The State argues that the medical records are not exculpatory but instead are

corroborating evidence of the testimony presented at trial that Parra suffered the hand wound

when a bullet came through the car door and hit his hand as he and Bruhn were attempting to

leave the scene in the car.  The medical records indicate that bullet fragments were located

throughout the right dorsal hand.  The State argues that the bullet fragments actually corroborate

their theory that the bullet went through the car door, entered Parra's hand and then fragmented

rather than exiting.

60.  A <u>Brady</u> violation occurs when: 1) the prosecution withheld evidence which is

favorable to the accused either because it is exculpatory or because it is impeaching; 2) the

favorable evidence was withheld, either willfully or inadvertently; and 3) the accused was

prejudiced by the failure to disclose the evidence.

61.  The Court finds that the medical records are not exculpatory evidence for the

Petitioner.  The theory that a weapon prevented the exit of the bullet fragments is mere

speculation, not exculpatory evidence.  Petitioner did not suffer a <u>Brady</u> violation by virtue of

these medical records.   Therefore, the Court will not address the other elements of the <u>Brady</u>

test, finding that Petitioner has failed to meet even the threshold test of prosecutorial misconduct.

<u>PETITIONER IS NOT ENTITLED TO AN EVIDENTIARY HEARING</u>

62.  Petitioner argues that he is entitled to an evidentiary hearing on the present Petition in

order to establish facts that cannot be conclusively determined from the record and exhibits.

Petitioner did not receive an evidentiary hearing in the state court proceeding.

63.  28 U.S.C. § 2254 (e)(2) states,

> If the applicant has failed to develop the factual basis of a claim in State court
> proceedings, the court shall not hold an evidentiary hearing on the claim unless the
> applicant shows that -
> (A) the claim relies on -  ...
>          (ii) a factual predicate that could not have been previously discovered
> through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and
> convincing evidence that but for constitutional error, no reasonable fact-finder would have
> found the applicant guilty of the underlying offense.

64.  In this case, the Petitioner was able to establish the factual basis for his claims of

ineffective assistance of counsel at trial and for his alleged <u>Brady</u> violation in his state court

proceeding without an evidentiary hearing.  He was able to attach affidavits, medical records and

proposed testimony to his Second State Petition that enabled the state court judge to evaluate the proffered evidence.  The Court finds that Petitioner was able to develop the factual basis of each of his claims in the state court proceedings below, just as he was able to develop them before this Court.  Moreover, even if the Petitioner were determined to not have been able to develop fully the factual basis of his claims in the state court proceedings, the Court has found that the facts underlying his claims in this Petition would not be sufficient to establish by clear and convincing evidence that but for the constitutional errors a reasonable jury would not have found Petitioner guilty of Aggravated Battery and Shooting at or from a Motor Vehicle.

65.  The Court finds that Petitioner has not met the burden required under the statute, 28 U.S.C. § 2254 (e)(2), for Petitioner to qualify for an evidentiary hearing.

<u>CONCLUSION</u>

The Court is mindful that, based upon the record before it, Petitioner's trial counsel was not exemplary.  It appears that his trial counsel could have been more prepared and could have conducted a more vigorous defense.   But the issue before this Court is whether Petitioner's constitutional right to a fair and just trial has been violated,  not whether his trial counsel stumbled and fumbled through the trial.  After an extensive review of the record, the Court finds that Petitioner did not receive ineffective assistance of counsel or suffer a <u>Brady</u> violation in violation of rights guaranteed to him by the United States Constitution.

The Court finds that the state court decision, which denied Petitioner's claims raised in this federal Petition, was on the merits as that term is used in the AEDPA. The Court further finds, after reviewing each one of Petitioner's claims, that the decision below denying those claims

26

was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts in light of all the evidence presented.  Mindful that ineffective assistance of counsel claims involve mixed questions of fact and law, the Court has carefully reviewed the legal issues raised in these claims and has determined that Petitioner did not receive ineffective assistance of counsel in violation of the Constitution.

## RECOMMENDATION

The Court recommends that the Petition  for a Writ of Habeas Corpus be DENIED because the Petitioner has failed to establish that he is in custody pursuant to a State court judgment in violation of the United States Constitution.  The Court further recommends that Respondent's Motion to Dismiss be GRANTED because the Petition fails to state a claim upon which relief can be granted.

## NOTIFICATION

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN TEN (10) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the United States District Court, Pete V. Domenici United States Courthouse, 333 Lomas Blvd. NW, Albuquerque, NM 87102, pursuant to 28 U.S.C. §636 (b)(1). A party must file any objections within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

ALAN C. TORGERSON
UNITED STATES MAGISTRATE JUDGE